**Terry SWORN, Plaintiff,**

v.

**WESTERN NEW YORK CHILDREN'S PSYCHIATRIC CENTER, Defendant.**

**No. 02–CV–0322A(Sr).**

United States District Court, W.D. New York.

June 9, 2003.

Terry L. Sworn, Buffalo, NY, pro se.

Stephen F. Gawlik, Assistant Attorney General, Buffalo, NY, for Defendant.

### DECISION AND ORDER

SCHROEDER, United States Magistrate Judge.

The parties have consented, pursuant to 28 U.S.C. § 636(c), to have the under-

signed conduct all further proceedings in this case, including entry of judgment. Dkt. # 8.

On April 30, 2002, plaintiff commenced this action *pro se*, alleging employment discrimination on the basis of race, color, sex, religion and national origin in violation of Title VII of the Civil Rights Act of 1994 (Title VII), as amended, 42 U.S.C. § 2000e *et seq*, and disability in violation of the Americans with Disabilities Act of 1990(ADA), as amended, 42 U.S.C. §§ 12111 *et seq.* Dkt. # 1.

Currently before the Court is the defendant's motion to dismiss the Complaint for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6). Dkt. # 5. For the reasons discussed below, defendant's motion is granted and the Complaint is dismissed.

### *BACKGROUND* [1]

Plaintiff was hired by the defendant as a food service worker commencing May 7, 1998. Plaintiff's July, 1998 probation report indicated satisfactory performance except in the category of time and attendance where it was noted that plaintiff "has 69 slips in for days off for Dr. Appts." but "No Dr. Notes." He was instructed to provide notes from his doctor to substantiate the need for time off. On July 22, 1998, a special report was completed noting that plaintiff had excessive no shows, call-ins and late arrivals and that he had failed to provide doctors notes for days requested off. On September 16, 1998, plaintiff was verbally counseled regarding time and attendance problems. On November 24, 1998, plaintiff's probationary report indicated significant improvement in time and attendance.

In January of 1999, plaintiff's probationary report notes eleven call-ins between December 7, 1998 and January 21, 1999. On February 18, 1999, plaintiff was verbally counseled regarding his disrespectful response to his supervisor's request that plaintiff provide a return to work notification from his physician following knee surgery. Plaintiff's physician authorized his return to work without restrictions as of May 1, 1999. On May 25, 1999, plaintiff received written counseling after he began singing songs with threatening words after being informed that his probation was being extended.

Plaintiff was terminated and subsequently reinstated during the Summer of 1999. Plaintiff's Probation Report for September of 1999 indicated inconsistent quality of work, time and attendance issues, falsifying a sign-in sheet, intimidation, harassment, insubordination, and inappropriate behavior. By letter dated December 9, 1999, plaintiff was advised that unless he provided medical documentation supporting his absence on December 7–8, 1999 and his claimed need for an additional four weeks of medical leave, he would be terminated. Plaintiff was terminated effective January 4, 2000 for failure to maintain a satisfactory standard of performance.

Plaintiff filed a verified complaint with the New York State Division of Human Rights ("NYSDHR"), on January 6, 2000. In his petition, he alleges "a disability within the meaning of the New York State

---

**1.** In light of the current procedural posture of this matter, unless otherwise indicated, the facts recited herein are taken from plaintiffs' complaint and attached exhibits. *See Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.' "), *quoting Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991).

Human Rights Law, sever[e] arthritis in knees, which does not prevent me from performing the duties of my job in a reasonable manner." Plaintiff further alleges that he was harassed because of his disability, by different supervisors, since he commenced employment with the defendant. For example, plaintiff alleges that he "was required to work without taking a break; written up because of one dirty dish; written up for not being at my work station while I was picking up dirty dishes; and cited for missing time and attendance." Plaintiff asserted that "[n]on-disabled co-workers were not treated in this manner." Plaintiff claims that he "was terminated because of my disability" and that the claim of unsatisfactory performance was a "subterfuge."

In response to plaintiff's complaint, the defendant stated that plaintiff returned to work without restrictions following medical leave from March 15 thru May 1, 1999. The defendant also noted the number of written and verbal counselings plaintiff received from three different supervisors regarding his "poor time and attendance, poor follow through and poor time management." The defendant also noted that

> WNY Children's Psychiatric Center has an established process and provides reasonable accommodation for many of its employees. Mr. Sworn has made it clear, as he did in [his complaint], he did not have a disability that prevented him from carrying out his responsibilities and, therefore, never followed the process in requesting an accommodation. The Office of Diversity Planning and Compliance and the Administration of Western N.Y. Children's Psychiatric Center has made every effort to assist Mr. Sworn in maintaining his job with the Center. Mr. Sworn has been terminated and brought back under an appeal process with a different supervisor. (As you will note in the attached document)

> Mr. Sworn has been given more opportunities than any probationary employee in the history of the facility. He has, through his own actions, left WNY Children's Psychiatric Center without choice but to terminate his employment.

The NYSDHR issued a "Determination and Order after Investigation" finding no probable cause to support the charges. Specifically,

> The investigation revealed complainant was terminated for poor time and attendance, poor follow-through and poor time management. The record contained no evidence to suggest complainant was treated differently because of a disability. The file showed respondent has terminated similarly situated non-disabled probationary employees.... The investigation did not reveal sufficient evidence to support a belief that complainant was terminated because of his disability.

The EEOC adopted the findings of the NYSDHR and issued a Dismissal and Notice of Rights letter dated March 1, 2002. Plaintiff commenced this action on April 30, 2002.

## DISCUSSION AND ANALYSIS

### Dismissal Standard

When ruling on a motion to dismiss, the court accepts the material facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff and against the defendant. *See Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir. 1998); *Cohen v. Koenig,* 25 F.3d 1168, 1171–72 (2d Cir.1994); *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992). However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness. *Albany Welfare Rights Organization Day Care*

*Center, Inc. v. Schreck,* 463 F.2d 620 (2d Cir.1972), *cert. denied,* 410 U.S. 944, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973).

The court is required to read the complaint broadly and with great latitude on a motion to dismiss. *Yoder v. Orthomolecular Nutr. Inst.,* 751 F.2d 555, 558 (2d Cir.1985). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). The complaint will be dismissed only if "it appears beyond doubt" that the plaintiff can prove no set of facts which would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001). Stated another way, I must determine whether plaintiff has stated any valid ground for relief in his complaint. *Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir.1993), *cert. denied,* 513 U.S. 1014, 115 S.Ct. 572, 130 L.Ed.2d 489 (1994).

### *ADA Claim*

The defendant argues that plaintiff's ADA claim is barred by the Eleventh Amendment to the United States Constitution. Dkt. # 6, p. 2.

■ In *Board of Trustees of the Univ. of Alabama v. Garrett,* the Supreme Court of the United States determined that claims for monetary damages pursuant to Title I of the ADA,[2] 42 U.S.C. §§ 12111–12117, are barred by the Eleventh Amendment to the United States Constitution,

which immunizes a state from lawsuits commenced in federal court by its own citizens. 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). Plaintiff commenced this suit against his former employer, the Western New York Children's Psychiatric Center, which is a facility operated by the New York State Office of Mental Health. Accordingly, to the extent that plaintiff seeks monetary damages with respect to his claim under Title I of the ADA, his complaint is dismissed with prejudice.

In *Garrett,* the Supreme Court declined to determine whether claims for monetary damages pursuant to Title II of the ADA, 42 U.S.C. §§ 12131–12134, are barred by the Eleventh Amendment. *See* 531 U.S. at 360, n. 1, 121 S.Ct. 955 ("We are not disposed to decide the constitutional issue whether Title II, which has somewhat different remedial provisions from Title I, is appropriate legislation under § 5 of the Fourteenth Amendment when the parties have not favored us with briefing on the statutory question."). However, the Court of Appeals for the Second Circuit has held that a private suit for money damages under Title II of the ADA may be maintained against a state "if the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability . . . ." *Garcia v. S.U.N.Y. Health Sciences Ctr.,* 280 F.3d 98, 112 (2d Cir.2001).

The question remains, however, whether plaintiff may assert a cause of action for *employment discrimination* under Title II of the ADA. Title II of the ADA, which is entitled "Public Services" provides, in relevant part, as follows:

---

**2.** Title I of the ADA, entitled "Employment," provides, in relevant part, that

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the

hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Title II defines the term "qualified individual with a disability" as "an individual with a disability who ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

In a footnote in the *Garrett* opinion, the Supreme Court recognized, but declined to answer

the question whether Title II of the ADA, dealing with "services, programs, or activities of a public entity" ... is available for claims of employment discrimination when Title I of the ADA expressly deals with that subject. *See, e.g., Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion" ...).

531 U.S. at 360, n. 1, 121 S.Ct. 955.[3] The Courts of Appeals for the Fifth, Ninth and Eleventh Circuits have answered this question with conflicting results. *See Zimmerman v. Oregon Dep't of Justice,* 170 F.3d 1169, 1173 (9th Cir.1999) (Title II inapplicable to employment discrimination), *cert. denied,* 531 U.S. 1189, 121 S.Ct. 1186, 149 L.Ed.2d 103 (2001); *Bledsoe v. Palm Beach County Soil & Water Conservation Dist.,* 133 F.3d 816 (11th Cir.) (Title II applicable to employment discrimination), *cert. denied,* 525 U.S. 826, 119 S.Ct. 72, 142 L.Ed.2d 57 (1998); *Decker v. Univ. of Houston,* 970 F.Supp. 575 (S.D.Tex. 1997) (Title II inapplicable to employment discrimination), *aff'd* 159 F.3d 1355 (5th Cir.1988). In the Second Circuit, district court decisions have also reached conflicting results. *Cf. Syken v. State of New York,* 2003 WL 1787250 (S.D.N.Y. Apr.2, 2003) (Title II inapplicable), *with Winokur v. Office of Court Admin.,* 190 F.Supp.2d 444, 449 (E.D.N.Y.2002) (Title II applicable).

 Following careful review of the statutory scheme and language of the ADA, as well as existing case law on the subject, it is my opinion that plaintiff should not be permitted to circumvent the holding of *Garrett,* which immunizes states from employment discrimination claims brought pursuant to Title I of the ADA, by commencing suit under Title II, a subchapter which lacks any of the procedural protections afforded employers under Title I.[4]

---

**3.** The Court of Appeals for the Second Circuit has also recognized, but declined to answer, this question. *See Mullen v. Rieckhoff,* 189 F.3d 461, 1999 WL 568040 (2d Cir.1999) (unpublished opinion).

**4.** For example, a plaintiff claiming employment discrimination based upon disability pursuant to Title I of the ADA would be required to exhaust administrative remedies by filing a timely complaint with the EEOC, obtaining a right to sue letter, and commencing suit within 300 days. *See* 42 U.S.C. § 12117 (applying Title VII administrative procedures to ADA claims); 42 U.S.C. § 2000e–5. "This exhaustion requirement is an essential element of Title VII's statutory scheme ... and is designed to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Shah v. New York State Dep't of Civil Serv.,* 168 F.3d 610, 614 (2d Cir.1999) (internal quotations omitted); *see also Francis v. City of N.Y.,* 235 F.3d 763, 768 (2d Cir.2000). A plaintiff proceeding under Title II of the ADA is not required to fulfill these administrative requirements. *See* 42 U.S.C. § 12133.

Thus, I adopt the reasoning of the Court of Appeals for the Ninth Circuit in *Zimmerman* and the District Court of the Southern District of New York in *Syken.*

Since plaintiff cannot recover monetary damages against the Western New York Children's Psychiatric Center, a New York State facility, under Title I of the ADA and cannot state a claim for employment discrimination under Title II of the ADA, defendant's motion to dismiss plaintiff's claim of discrimination in employment based on disability against is granted with prejudice.

### Title VII Claim

The defendant argues that plaintiff's complaint to the NYSDHR was limited to allegations of discrimination based on disability. Dkt. # 6, p. 3. Accordingly, the defendant argues that plaintiff has failed to exhaust his administrative remedies with respect to any claim under Title VII. Dkt. # 6, p. 3.

■ "A plaintiff may bring an employment discrimination action under Title VII ... only after filing a timely charge with the EEOC or with 'a State or local agency with authority to grant or seek relief from such practice.' " *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 82–83 (2d Cir.2001), *citing* 42 U.S.C. § 2000e–5. "Exhaustion of remedies is a precondition to suit ... and a plaintiff typically may raise in a district court complaint only those claims that either were included in or are 'reasonably related to' the allegations contained in [his] EEOC charge." *Id.* at 83 (citations omitted). "A claim raised for the first time in the district court is 'reasonably related' to allegations in an EEOC charge where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* (internal quotation omitted). For example, allega-

tions that an employer retaliated against the employee for filing a charge before the administrative agency are "reasonably related" to the original charge. *Shah,* 168 F.3d at 613.

■ In the instant case, plaintiff has attached to his complaint a copy of his complaint to the NYSDHR, which was assigned NYSDHR No: 7–E–D–00–7903412–D and Federal Charge No: 16GA08284. That complaint alleged discrimination because of disability pursuant to the ADA. The defendant's response to that complaint and the NYSDHR's Determination and Order after Investigation, as well as the EEOC's adoption of those findings and Notice of Suit Rights with respect to the ADA claim, are also attached to plaintiff's complaint. Thus, with respect to his claim of employment discrimination on the basis of disability, it appears that plaintiff has complied with the administrative prerequisites to commencing suit in federal court.

Plaintiff's claim of employment discrimination on the basis of his race, color, sex, religion and national origin does not "reasonably relate" to plaintiff's charge of discrimination on the basis of disability, *to wit,* severe arthritis in his knees, and is not, therefore, properly before this Court pursuant to the right-to-sue letter attached to plaintiff's district court complaint. The Court notes, however, that in addition to the documents regarding his claim of disability, plaintiff also attached a Notice from the EEOC which references NYSDHR Case No: 7–E–O–00–7903768–E and EEOC Charge No: 16GA08231 and informs plaintiff of his federal rights following his complaint of employment discrimination pursuant to Title VII. Thus, it appears as though plaintiff may have filed a separate complaint with the NYSDHR alleging employment discrimination pursu-

ant to Title VII. Accordingly, the Court will grant the defendant's motion to dismiss plaintiff's claim of employment discrimination under Title VII without prejudice. Plaintiff may, within 60 days of the filing of this Order, amend his complaint by attaching a copy of his complaint to the NYSDHR of employment discrimination pursuant to Title VII; the NYSDHR's Determination and Order after Investigation; and the EEOC's response to that determination.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiff's complaint (Dkt.# 5), is **GRANTED.** The dismissal of plaintiff's ADA cause of action is with prejudice. The dismissal of plaintiff's Title VII claim is without prejudice to plaintiff's right to amend his complaint within 60 days of the filing of this Order by attaching a copy of his complaint to the NYSDHR of employment discrimination pursuant to Title VII; the NYSDHR's Determination and Order after Investigation; and the EEOC's response to that determination.

**SO ORDERED.**